Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00703-CV

————————————

## CHRISTOPH HENKEL, Appellant

## V.

## EMJO INVESTMENTS, LTD. AND H.J. VON DER GOLTZ, Appellees

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2011-44058

## O P I N I O N

This is an interlocutory appeal from an order denying a special appearance. The underlying lawsuit arises from a failed coal gasification startup venture, via a company headquartered in Texas. The company declared bankruptcy in 2011, resulting in litigation in the federal and state courts. This suit stems from a partial

remand from a federal bankruptcy court in the Southern District of Texas, Houston Division. Emjo Investments, Ltd. and H.J. von der Goltz, among other investors, sued Michael Sydow (a Texas resident and Emjo's former president, CEO, and director) and other former board members, including Christoph Henkel and John Preston. The plaintiff investors allege that Sydow, Henkel, and Preston conspired to commit fraud against them, causing their investment losses.

In this appeal, Christoph Henkel contends that trial court erred in denying his special appearance because (1) he lacks the necessary minimum contacts to support personal jurisdiction over him in Texas, and (2) the trial court's exercise of jurisdiction over him does not comport with fair play and substantial justice. We affirm the trial court's order.

## Background

In 2008, Texas Syngas, Inc. (TSI), a Nevada corporation, registered to do business in Texas. It declared Houston, Texas, as its principal place of business. Henkel served on the TSI board of directors. In 2009, NC12, Inc., another Nevada corporation, registered to do business in Texas and also made Houston, Texas, its corporate headquarters. NC12 acquired TSI's assets. Christoph Henkel was a member of the NC12 board of directors.

NC12 was formed to further develop a technology that sought to efficiently process synthetic gas from coal. Sydow and Preston raised more than $10 million in capital from investors to fund the company.

In August 2010, Sydow and Preston orchestrated the removal of several board members from NC12's board of directors, including the technology's developer and von der Goltz, one of the appellees here. These ousters eliminated independent oversight of the company. Sydow, Preston, and Henkel constituted the remaining board of directors.

In November 2011, some of NC12's shareholders sued the company for fraud and shareholder oppression. Others, including Emjo and von der Goltz, intervened in the suit, asserting claims based on their rights as individual investors. Relevant to this appeal, von der Goltz and Emjo assert that Henkel and Preston conspired with Sydow during the period from 2008 through 2010 to raise investment dollars for NC12, but misappropriated the funds for personal use.

In their original petition in intervention, Emjo and von der Goltz alleged that Henkel engaged in business in Texas and that "a substantial part of the transactions, acts, and omissions giving rise to [their] claims occurred in Harris County, Texas." They further alleged that Henkel, after receipt of investment funds, agreed to serve on the board of directors of NC12 as a representative of

"new investors" in the venture. Finally, they alleged that Henkel and the other defendants conspired to commit fraud.

In October 2011, NC12 filed for bankruptcy protection under Chapter 11 of the federal Bankruptcy Code. The bankruptcy action was converted to a Chapter 7 proceeding six months later. The bankruptcy court remanded "the Intervenors' securities fraud claims, including the aiding and abetting and conspiracy to commit fraud" claims.

The trial court initially granted Henkel's special appearance. Emjo and von der Goltz moved for reconsideration, noting the conflicts that appear between Henkel's affidavit in support of his special appearance and other evidence before the trial court. Among other things, Emjo and von der Goltz brought to the trial court's attention that:

- Henkel had denied having any investments in Texas, but other evidence showed that he was a shareholder in NC12 and TSI, both Texas-based companies, in his individual capacity, and he received shares in SulphCo, Inc. (SulphCo), an unrelated, Texas-based company, when he joined the SulphCo board in December 2005.

- Henkel denied serving on NC12's board of directors, but an October 2010 company memorandum informed its investors of Henkel's appointment to the NC12 board, and Henkel identified himself as a former director of NC12 in the NC12 bankruptcy case.

- Henkel averred that he had not visited or traveled to Texas in the past 30 years. But Emjo and von der Goltz provided an

4

affidavit with their response to the special appearance, executed by former TSI/NC12 employee Charles Kimball. Kimball averred that Christoph Henkel had visited Houston on two occasions between 2008 and the end of 2010 to meet with Sydow. Kimball recounted that Sydow instructed him to drive Henkel from the airport to a Houston hotel very close to Sydow's office during the first visit and to drive him directly to Sydow's office during the second visit.

- Henkel denied having participated in any litigation in Texas, but Harris County clerk records show that in 2010, he made a special appearance in a shareholder derivative action on behalf of SulphCo shareholders.[1]

The trial court granted Emjo and von der Goltz's motion for new trial and denied Henkel's special appearance.

## Special Appearance

### A. Standard of Review

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). A plaintiff bears the burden of pleading allegations that bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance carries the burden of negating those allegations. *Id.*;

---

[1] *Hendrickson v. Gunnerman*, Cause No. 2008-66743, in the 127th District Court of Harris County, Texas.

5

*Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 446 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The trial court must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. In a special appearance, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926 (Tex. App.—Austin 2010, no pet.). We do not "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.).

When, as in this case, a trial court does not issue findings of fact or conclusions of law, we imply all relevant facts necessary to support the judgment if the evidence supports them. *Moncrief Oil*, 414 S.W.3d at 150. We will affirm the trial court's ruling on any legal theory that finds support in the record. *Dukatt v. Dukatt*, 355 S.W.3d 231, 237 (Tex. App.—Dallas 2011, pet. denied).

## B.    Applicable Law

A Texas court has personal jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and it is consistent with federal due process. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *Curocom Energy LLC v. Young-Sub Shim*, 416 S.W.3d 893, 897 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see* TEX. CIV.

PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008). Federal due process requires that the nonresident defendant have purposefully established minimum contacts with the forum state, such that the defendant reasonably could anticipate being sued there. *Curocom Energy*, 416 S.W.3d at 896. The exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985)). If the nonresident defendant has purposefully established minimum contacts with the forum state, then only in rare cases will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

A nonresident's contacts can give rise to either specific or general personal jurisdiction. *Moncrief Oil*, 414 S.W.3d at 150. Specific jurisdiction exists when the cause of action is related to the nonresident's purposeful activities in the forum. *Id.* General jurisdiction, in contrast, arises when the defendant is domiciled in the forum or can be "fairly regarded as at home." *Daimler AG v. Bauman,* 134 S. Ct. 746, 760 (2014). In its recent decisions, the United States Supreme Court has "increasingly trained on the relationship among the defendant, the forum, and the litigation"—the hallmarks of specific jurisdiction—and has observed that general

jurisdiction occupies "a less dominant place in the contemporary scheme." *Id.* at 758 (footnotes and citations omitted).

If a plaintiff pleads sufficient jurisdictional allegations, then the nonresident defendant assumes the burden of negating all possible bases for jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). A defendant also can negate jurisdiction by adducing evidence that disproves the plaintiff's factual allegations, by showing that the defendant's contacts with the forum state "fall short of purposeful availment," or by demonstrating that "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc).

## C. Analysis

In this case, the parties agree that Henkel is not domiciled or "at home" in Texas; thus, we confine our analysis to whether the record supports the trial court's exercise of specific jurisdiction over him in this suit. In a specific jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation, and determine whether a substantial connection exists between Henkel's contacts with Texas and the operative facts of the litigation. *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 575–76. We consider the "quality and nature of

8

[these] contacts, rather than their number." *Am. Type Culture Collection*, 83 S.W.3d at 806. And, we must conclude that Henkel's purposeful conduct, not another's, caused the contact. *See Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 1872–73 (1984); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (holding that some act by defendant must be shown in order to bring defendant within state's jurisdiction and comport with due process). A substantial connection can result, however, from a single purposeful act. *Moncrief Oil*, 414 S.W.3d at 151–52 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957)). With these principles in mind, we turn to the allegations in this case and Henkel's contacts with Texas.

### 1. Texas meetings

Kimball avers that, between 2008 and the end of 2010, Sydow directed him to chauffeur Henkel to and from the airport for meetings on two occasions, one at Sydow's office and the other at a nearby hotel. Thus, there is some evidence that Henkel purposefully attended two meetings in Texas with Sydow. Henkel contends that evidence of two meetings does not equate to evidence of a conspiracy when no party adduced evidence of the substance of those two meetings.

The Supreme Court of Texas, however, considered and rejected a similar contention in *Moncrief Oil*. There, the plaintiff pleaded that the defendants committed torts in Texas by conspiring to misappropriate the plaintiff's alleged trade secrets at meetings held in Texas. 414 S.W.3d at 148–49. The defendants in that case claimed that the meetings involved an unrelated matter and not any misappropriation of trade secrets. *Id.* at 147. In rejecting that contention, the Court declared: "[W]hat the parties thought, said or intended is generally irrelevant to their jurisdictional contacts. Regardless of the defendants' subjective intent, their Texas contacts are sufficient to confer specific jurisdiction over the defendants as to the trade secrets claim." *Id.* The meetings with an alleged co-conspirator demonstrate Henkel's purposeful availment of the Texas forum, rather than simply a fortuitous connection to it. When coupled with allegations of a conspiracy, they provide a nexus for the suit to be brought in a Texas court. *See id.*

Further, the trial court reasonably could have concluded that Henkel's characterization of his Texas contacts as unrelated to any alleged conspiracy was not credible, given that Henkel proffered an affidavit that he had not been to Texas in 30 years. Emjo and von der Goltz adduced evidence of Henkel's presence in Houston on two occasions for meetings with Sydow, and Henkel did not specifically deny that those meetings took place when presented with Kimball's affidavit.

10

The Kimball affidavit, moreover, is not the only evidence in the special appearance record that connects Henkel to Texas and the allegations in the lawsuit. Most notably, Henkel's membership on NC12's board of directors created "continuing obligations" between himself and a Texas-based company, the formation of which is alleged to be at the center of the alleged fraudulent investment scheme. *See Moncrief Oil*, 414 S.W.3d at 151.

Henkel suggests that we must confine our consideration to those jurisdictional facts alleged in the original petition, which alone would not support jurisdiction over Henkel. He contends that those allegations are directed against Henkel in his role as a director, which are subsumed within the bankruptcy proceeding, and not his individual conduct. Contrary to Henkel's assertion, however, we consider both the plaintiff's original pleadings and its response to the defendant's special appearance in determining whether the plaintiff satisfied its burden to allege jurisdictional facts. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see* TEX. R. CIV. PROC. 120a(3). In conducting our review, we accept as true both the allegations in the pleadings and the evidence on file. *Touradji*, 316 S.W.3d at 23 (citing *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

11

## 2. Texas interest in the cause of action

Henkel similarly contends that no evidence shows that he made any alleged misrepresentations in Texas giving rise to the fraud claims. Emjo and von der Goltz's claim against Henkel is for conspiracy to commit fraud. Civil conspiracy is a derivative action premised on an underlying tort. *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 420 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). "The required elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Id.* A "'civil conspiracy requires specific intent' to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (quoting *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)). Emjo and von der Goltz, therefore, need not have alleged that Henkel personally made a misrepresentation in Texas; rather, they met their jurisdictional burden by alleging that Henkel engaged in a conspiracy with a Texas resident to defraud individuals into investing funds in a Texas-based company. Henkel was a member of the board of directors of that company, and is alleged to have met with its president on two occasions during the time frame in which the company sought investments from the plaintiffs. We hold that Henkel did not satisfy his burden to negate the

allegations that he participated in acts in furtherance of the conspiracy in Texas. *See Moncrief Oil*, 414 S.W.3d at 151.

## D. Fair Play and Substantial Justice

Having found that Henkel purposefully established minimum contacts with Texas, we consider whether the exercise of personal jurisdiction over Henkel comports with traditional notions of fair play and substantial justice. *See Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 447 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Burger King*, 471 U.S. at 475–76, 105 S. Ct. at 2183–84). Where appropriate, we evaluate: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Guardian Royal*, 815 S.W.2d at 231. Considering these factors, we hold that exercising personal jurisdiction over Henkel comports with traditional notions of fair play and substantial justice.

Henkel, an Austrian citizen who lives in London, claims that he does not regularly travel to Texas and that travel to Texas would be time-consuming and logistically difficult. The fact that Henkel is not a Texas resident, however, is insufficient in itself to show that his burden is excessive. *See Tempest Broad.*

13

*Corp. v. Imlay*, 150 S.W.3d 861, 877 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Henkel has significant business and real estate holdings in the United States. Before joining NC12's board, Henkel belonged to the board of another, unrelated Texas corporation and made a special appearance in Texas litigation to settle claims arising from that corporation's demise. He filed a proof of claim in NC12's bankruptcy proceeding in Texas, which he and the rest of the board had voted to file in the United States District Court for the Southern District of Texas. Henkel is named as a defendant in a suit brought by the Texas bankruptcy trustee for NC12's estate in Texas state court.

Texas courts have an interest in adjudicating the claims of a corporation doing business in Texas, and Texas is a convenient forum for the litigants, as evidenced by NC12's decision to file for bankruptcy here. *See Tabasso v. Bearcom Grp., Inc.*, 407 S.W.3d 822, 828–29 (Tex. App.—Dallas 2013, no pet.). We hold that the factors relevant to the fair play and substantial justice inquiry favor exercising personal jurisdiction over Henkel.

## Conclusion

The trial court properly denied Henkel's special appearance. We therefore affirm its order.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.