**REVERSE AND RENDER and Opinion Filed November 30, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01472-CV

### HEATHER DOBROTT, Appellant
### V.
### JEVIN, INC., A TEXAS CORPORATION; AND DANIEL E. PTAK, AN INDIVIDUAL, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-00984-2017**

## MEMORANDUM OPINION
Before Justices Myers, Brown, and Whitehill
Opinion by Justice Whitehill

This interlocutory appeal is before us following the denial by operation of law and subsequent granting of a motion to dismiss under the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE § 27.001-.011 (TCPA).[1] Appellant Heather Dobrott argues that because the trial court still had plenary power, it had the authority to grant her motion to dismiss more than thirty days after the motion was heard. Alternatively, Dobrott argues that the trial court erred by denying her motion to dismiss by operation of law because the communications at issue were protected speech about a matter of public concern and Jevin, Inc. failed to establish the elements of its claims against her by clear and convincing evidence.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12).

We conclude that, based on our existing precedent, the trial court had no authority to grant the TCPA motion to dismiss outside the time allowed by statute. And the trial court erred by denying the motion by operation of law because Dobrott's communications were protected free speech concerning Jevin's goods or services in the marketplace and Jevin failed to prove the elements of its claims by clear and convincing evidence. We therefore reverse the trial court's denial of the motion, render judgment for Dobrott, and remand to the trial court for a determination of Dobrott's attorney's fees, sanctions, and expenses.

## I. BACKGROUND

Jevin, Inc. provides registration and payment processing services for youth sports associations. Daniel Ptak is Jevin's president (together, Jevin).

Heather Dobrott was a Garland Youth Soccer Association board member. She also runs a website entitled website entitled "*Real/scam.com - ls it, or isn't it? You decide*" that, according to the affidavit attached to her motion to dismiss, is a general discussion website on which individuals can review and openly discuss issues of public concern in the community, including financial fraud and scams, reviews of products and services in the marketplace, issues of public concern reported in the news, and other issues that affect economic or community well-being. Anyone is welcome to post on the site, which does not generate income. Dobrott posted several statements about Jevin on the site that Jevin claimed were defamatory. She also sent emails to some of Jevin's existing clients and made Facebook posts that included links to media coverage about Jevin and Jevin's legal and financial difficulties.

Initially, Jevin sued two youth football leagues and approximately 107 people seeking to recover money owed pursuant to a contract with one of the football leagues. Jevin subsequently amended its petition to name Dobrott as a defendant, asserting "defamation, libel, and slander" claims.

Dobrott filed a TCPA dismissal motion alleging that the comments Jevin attributed to her were protected speech relating to goods or services Jevin provided in the marketplace and involved a matter of public concern.

On the hearing date, Jevin filed its second amended petition asserting claims for conspiracy to defraud and tortious interference with existing contracts and prospective business relations, which, but for one paragraph, were based on the same factual allegations as in the first amended petition. Then, at the hearing, Jevin notified the court that it was "nonsuiting or dismissing" its claims against Dobrott for "defamation, libel, and slander." The trial court entered an order nonsuiting these claims.

Dobrott filed a second TCPA dismissal motion, which challenged the second amended petition's claims. As in the first motion, Dobott asserted that the comments that were the subject of Jevin's claims against her were protected speech relating to goods or services Jevin provided in the marketplace and involved a matter of public concern.

The second motion to dismiss was heard on November 2, 2017. But it was denied by operation of law because the trial court did not rule on the motion within thirty days. *See* TEX. CIV. PRAC. & REM. CODE. On December 21, 2017, Dobrott filed her notice of appeal.

While the appeal was pending, on February 27, 2018, the trial court signed an order granting Dobrott's motion to dismiss.

## II. ANALYSIS

A.    **First Issue**: **Did the trial court have the authority to grant the TCPA dismissal motion more than thirty days after the motion was heard?**

1.    **Applicable Law**

A trial court must rule on a TCPA motion to dismiss not later than the 30th day following the date of the hearing. TEX. CIV. PRAC. & REM. CODE § 27.005(a). If the trial court does not rule on the motion within the time prescribed, the motion is considered denied by operation of law. *Id.*

–3–

§ 27.008(a); *see also Dallas Morning News v. Mapp*, No. 05-14-00848-CV, 2015 WL 3932868, at *3 (Tex. App.—Dallas June 26, 2015, no pet.) (mem. op.).

### 2. The trial court's authority to grant the motion

Dobrott argues that even though the trial court granted her motion more than thirty days after the hearing, it had the authority to do so because the ruling was made within the court's plenary power. In support of her argument, Dobrott urges reconsideration of this court's prior decisions holding that a trial court is without authority to grant a TCPA motion to dismiss more than thirty days after a hearing. S*ee Dallas Morning News v. Mapp*, No. 05-14-00848-CV, 2015 WL 3932868, at *3 (Tex. App.—Dallas June 26, 2015, no pet.) (mem. op.); *Kim v. Manchac*, No. 05-17-00406-CV, 2018 WL 564004, at *1 (Tex. App.—Dallas Jan. 26, 2018, no pet.) (mem. op.); *see also Avila v. Larrea*, 394 S.W.3d 646, 656 (Tex. App.—Dallas 2012, pet. denied) (statute requires that the court rule on the motion within thirty days of hearing and either dismiss the action or not). We decline to do so.

"We may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc." *MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.); *see also Park Forest Baptist Church v. Park Forest Ctr.*, No. 05-96-00188-CV, at *4 (Tex. App.—Dallas Feb. 27, 1998, pet. denied) (not designated for publication) ("We do not lightly disregard the precedent of this Court, and absent a specific ruling by the supreme court on this issue, we are bound by our prior decisions."). None of these events have happened, so we must follow our precedents and resolve Dobrott's first issue against her.

### B. Second, Third, and Fourth Issues: Did the trial court err by denying Dobrott's TCPA motion by operation of law?

Dobrott's second, third, and fourth issues argue that the trial court erred in denying her motion to dismiss by operation of law because her communications were protected free speech

concerning Jevin's goods or services in the marketplace and Jevin failed to prove the elements of its claims by clear and convincing evidence. As discussed below, we agree.

### 1. Standard of Review and Applicable law

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE § 27.002. To facilitate this purpose, the TCPA provides a procedure for expeditiously dismissing a non-meritorious legal action that is based on, relates to, or is in response to a party's exercise of certain delineated rights, including the right to free speech, which is defined as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b),(c). "In other words, the TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Mohamed v Ctr. for Sec. Policy*, No. 05-17-00278-CV, 2018 WL 3372921, at *2 (Tex. App.—Dallas July 11, 2018, no pet. h.).

To obtain dismissal under the TCPA, the movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" a statutorily protected right. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also In re Lipsky*, 460 S.W.3d at 586.

If the movant carries its initial burden, the nonmovant must then establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587.

If the nonmovant meets this burden, the burden again shifts and, to be entitled to dismissal, the movant must establish by a preponderance of the evidence "each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

When determining whether a legal action should be dismissed under the TCPA, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018). A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) (orig. proceeding)).

We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under §27.005. *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 727 (Tex. App.—Dallas 2016, pet. denied).

**2.      Do the relevant pleadings allege facts that if true would establish that Jevin's claims are based on, relate to, or in response to Dobrott's exercise of her right to free speech?**

In the first step of the TCPA dismissal procedure, the party filing the motion to dismiss must show by a preponderance of the evidence that the legal action is "based on, relates to, or is in response to" the party's "exercise of," relevant to this appeal, "the right of free speech." TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), .005(b); *see Hersh v. Tatum*, 526 S.W.3d 462, 466 (Tex. 2017); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). Indeed,

> When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more. We disapprove the contrary statements in *Pickens* [*v. Cordia,* 433 S.W.3d 179, 188 (Tex. App.—Dallas 2014, no pet)] and the cases that have followed it.

*Hersh*, 526 S.W.3d at 467 (pleadings control over contrary sworn testimony in the phase one analysis).

The exercise of free speech is defined as a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE 27.001 (3). A "communication" includes

"the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(2). "A matter of public concern" is defined as an issue related to any of the following:

(A) health or safety;
(B) environmental, economic, or community well-being;
(C) the government;
(D) a public official or public figure; or
(E) a good, product, or service in the market place.

*Id.* §27.001(7). The communications need not specifically mention these categories, but rather, need only be statements "in connection with" these issues. *ExxonMobil*, 512 S.W.3d at 900.

As reflected in Jevin's second amended petition, the factual allegations relied on in support of Jevin's claims against Dobrott include the following communications, all of which were made on Dobrott's website:

1. June 24, 2016: "Jevin, which clearly seems to be a Ponzi in imminent collapse, has customers bailing in droves."

2. August 9, 2016: "It seems quite clear that Jevin is operating as a Ponzi . . . I advised those out money to do chargebacks as that has been a successful strategy for other groups that couldn't get their money."

3. October 4, 2016: "Dan Ptak runs Jevin out of his home in Allen, TX and as the law stands Jevin is likely uncollectable . . . Hopefully, more chargebacks will put an end to the Jevin scam."

4. October 19, 2016: "I encouraged them to contact the Allen, TX police and to initiate chargebacks as that seems the most effective means to get the money that is owed from Jevin."

5. October 21, 2016: "Jevin's Dan Ptak is one of the dirtiest businessmen I have come across . . . No one will use this dirty and dishonest company seeing the way he has repeatedly abused his customers."

6. March 13, 2017: "No one in their right mind will ever do business with Jevin again. Dan Ptak is such a low life creep that he pays weeks late and then sues his desperate customers."

These statements focused on payment problems with Jevin's services (Jevin's payment of registration fees to youth leagues), and attempted to warn about the issues to those currently using his services or who might consider doing so. That is, the communications concerned Jevin's services in the marketplace. *MacFarland v. Le-Vel Brand,* No. 05-16-00672-CV, 2017 WL 1089684, at *7 (Tex. App.—Dallas Mar. 23, 2017, no pet.) (mem. op); Avila, 394 S.W.3d at 655.

The statements were thus an exercise of free speech on a matter of public concern because they were connected with matters of community well-being and safety. *See Adams*, 547 S.W.3d at 890, 895-97 (Tex. 2018); *Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.); *AOL, Inc. v. Malouf,* No. 05-13-01637-CV, 05-14-00568-CV, 2015 WL 1535669, at *2 (Tex. App.—Dallas Apr. 2, 2015, no pet.).[2]

Therefore, the record reflects that Dobrott met her §27.003(a) burden. Next, we consider whether Jevin proved all essential elements of his claims by clear and convincing evidence. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587.

### 3. Did Jevin prove all essential elements of his claims by clear and convincing evidence?

#### a. Applicable Standards

Once Dobrott established that Jevin's suit was based on, relates to, or is in response to the exercise of her right to free speech, the trial court was required to dismiss the lawsuit unless Jevin established "by clear and convincing evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see Hersh*, 526 S.W.3d at 467–68. This standard requires more than "mere notice pleading," and the nonmovant must "provide enough detail to show the factual basis for its claim." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam); *see also Mohamed*, 2018 WL 3372921, at *2. This pleading

---

[2] Dobrott argues alternatively that she was exercising her right of assembly, but we need not reach this issue. *See* TEX. R. APP. P. 47.1.

requirement, however, does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. *In re Lipsky*, 460 S.W.3d at 591.

Jevin's claims against Dobrott include: (i) tortious interference with an existing contract; (ii) tortious interference with prospective relations; and (iii) conspiracy to defraud.

### b. Tortious Interference With Contracts

A prima facie tortious interference with an existing contract case requires proof of these elements: (i) a valid contract subject to interference; (ii) the defendant willfully and intentionally interfered with the contract; (iii) the interference proximately caused the plaintiff's injury; and (iv) the plaintiff incurred actual damages. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). Jevin's proof does not establish all of these elements.

Jevin identifies two contracts, one with Ames Little League Baseball and another with Pleasant Hill Little League. But he provides no evidence showing that Pleasant Hill stopped doing business with him or terminated its contract. Indeed, the evidence establishes the opposite.

Specifically, Jevin's evidence includes a communication from Pleasant Hill's president to Dobrott telling her to stop communicating with Pleasant Hill about Jevin, and warning that failure to do so would be considered harassment in which law enforcement would become involved. Although Pleasant Hill apparently found the Dobrott communications annoying, there is no indication that it cancelled its contract with Jevin.

Likewise, Jevin's evidence does not establish that he lost a contract with Ames because of Dobrott's statement. The classic proximate cause test applies to tortious interference cases—cause in fact and foreseeability. *See Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 126 (Tex. App.—El Paso 1997, pet. denied).

Considering cause in fact, the defendants' acts or omissions must have been a "substantial factor" in causing the injury without which the harm would not have occurred  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

"Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his act created for others.  *Portlock v. Perry*, 852 S.W.2d 578, 583 (Tex. App.—Dallas 1993, writ denied) (en banc).

Cause in fact and foreseeability cannot be established by mere conjecture, guess, or speculation.  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472,477 (Tex. 1995).

Here, although the evidence shows that Ames stopped doing business with Jevin, Ames's president indicated that he did not "put a lot of stock" in "the rumors . . . about missing money." Although he said that "the claims from that woman who keeps attacking my Facebook page," went into "the con category," he also said that there were other factors that were considered in determining that Ames would not do business with Jevin anymore, including: (i) Jevin representatives not returning the president's and board members' emails on occasion; (ii) the lack of a user-friendly app for parents; and (iii) cost. Regarding the latter, the president says that "Another company I was approached by offered their program at very little cost.  I liked what I saw out of the program, and I would be lying if I said that saving a substantial amount of money wasn't a huge factor in deciding this."  Thus, the Ames communication does not establish a causal connection between Dobrott's conduct and Jevin's loss of the Ames contract.

Jevin also states, "I have seen a dramatic decrease in new business and the loss of current clients," but offers no proof to support this conclusory statement.  Neither the decrease nor the loss of customers is quantified, and the customers and potential customers are not identified. Conclusory statements are not probative and will not establish a prima facie case.  *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.).

Because Jevin failed to adduce clear and convincing evidence of a prima facie case for every element of tortious interference with a contract, the claim was subject to TCPA dismissal. Tex. Civ. Prac. & Rem. Code § 27.005(c).

### c. Tortious Interference With Prospective Business Relationships

The proof also fails to establish all of the elements for tortious interference with prospective business relationships. The elements for such a claim are: (i) a reasonable probability the plaintiff would have entered into a business relationship with a third person; (ii) the defendant acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (iii) the defendant's conduct was independently tortious or unlawful; and (iv) the interference proximately caused the plaintiff to suffer injury. *See Coinmatch Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Jevin's evidence consisted of these conclusory statements:

"Prior to this legal action originated, Jevin, Inc. was in in serious discussions with two potential buyers for the company. However, due to . . . Dobrott's continued smear campaign, the potential buyers have backed out and rescinded their offers. I have and continue to suffer injuries due to . . . Dobrott's actions." . . .

"This loss of clients has cost me dearly. From 2012 to 2015, Jevin, Inc. earned roughly $16.9 million for the referenced years. On average, for the past seven (7) years, I contracted with 300 organizations and leagues for an entire year. This year to date I have only contracted with twenty-four (24) organizations."

"Since early 2016, when Defendant Dobrott first instituted her social media campaign against me, I have only contracted with twenty-four (24) organizations. A comparison with previous years shows just how effective-and damaging-Defendant Dobrott's campaign was. Even worse, I have had to close down my Jevin, Inc. Facebook and Youtube [sic] page for over a year because I received displeased messages from third-parties, which directly damaged my business' reputation."

"In fact, now over twelve (12) months later, I am still receiving messages from current prospective clients and other contacts that they have read Defendant Dobrott's accusations and that they refuse to do business with me."

These statements and the accompanying attachments, however, fail to establish a reasonable probability that Jevin would have entered into a business relationship, or that Dobrott's interference caused Jevin to suffer an injury. The statements and attachments do not identify the two potential buyers or anything about the potential sales Jevin lost. There is nothing that substantiates Jevin's prior earnings and the contracts he claims to have had, the current company contracts, or the earnings after Dobrott made her posts. Nothing identifies the companies that Jevin alleges would not do business with him because of the posts. And nothing establishes a causal connection between Dobrott and the loss of future business relationships, particularly since the evidence shows the lost business could have resulted from other outside factors such as the numerous stories about Jevin in the media.

Suspicion is not sufficient to support a finding of legal causation. *See Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007). But the evidence Jevin submitted, at best, establishes only that he suspects he lost prospective business because of Dobrott. This is insufficient to establish a tortious interference with prospective business relations claim.

### d. Conspiracy to Defraud

Finally, we examine the evidence concerning Jevin's conspiracy to defraud claim. Conspiracy to defraud requires: (i) two or more persons; (ii) an object to be accomplished; (iii) a meeting of the minds on the object or course of action; (iv) one or more unlawful or overt acts; and (vi) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

Jevin's alleged conspiracy is between Dobrott, Skyview Youth Football, Wasatch Front Football League, and 106 other participants. Specifically, his petition alleges that:

> These Defendants engaged in a conspiracy to deprive Plaintiff Jevin of its property through fraud and misrepresentation that would result in Plaintiff Jevin allowing access to its goods and services for which Participant Defendants' accepted and ultimately charged back payments, which would eventually result in Plaintiff Jevin incurring chargeback fees and other losses. Defendant Dobrott conspired with these Defendants as well as others, advising these Defendants as well as other

–12–

organizations which had contracts with Plaintiff Jevin to engage in chargeback activity. Defendant Dobrott did so in an apparent scheme to drive Plaintiff Jevin out of business for reasons known to Defendant Dobrott and which have been made public by Defendant Dobrott . . . .

But nothing in Jevin's evidence supports any conspiracy element. For example, Jevin does not establish a meeting of the minds among the 109 alleged co-conspirators, the object they sought to accomplish, the specific overt act in furtherance of the conspiracy, or that any of these acts proximately caused him damage. *Tri*, 162 S.W.3d at 556. Likewise, there is no evidence of the underlying fraud alleged to support the conspiracy. *See Henkel v. Emjo Investments, Ltd*., 480 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (civil conspiracy is a derivative action premised on an underlying tort). As a result, Jevin failed to carry his burden to adduce clear and convincing evidence on his conspiracy claim.

Because Dobrott established that Jevin's legal action is based on her exercise of free speech about a matter of public concern and Jevin failed to meet the requisite burden of proof on his claims, the trial court erred in denying Dobrott's motion to dismiss by operation of law. We resolve Dobrott's second, third, and fourth issues in her favor.

## C.    Attorney's Fees and Expenses

The TCPA requires the trial court to award court costs, attorney's fees, expenses, and sanctions to a party who prevails on its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a). Because the trial court has not had the opportunity to consider Dobrott's attorney's fees, sanctions, and expenses, we remand so that it may do so.

## III. Conclusion

Having sustained Dobrott's second, third, and fourth issues, we reverse the trial court's denial of the motion to dismiss by operation of law, dismiss Jevin's claims against Dobrott, and remand to the trial court for consideration of Dobrott's reasonable attorney's fees, sanctions, and expenses.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

171472F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HEATHER DOBROTT, Appellant

No. 05-17-01472-CV      V.

JEVIN, INC., A TEXAS CORPORATION;
AND DANIEL E. PTAK, AN
INDIVIDUAL, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-00984-2017.
Opinion delivered by Justice Whitehill.
Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the trial court's denial of the motion to dismiss is **REVERSED** and judgment is **RENDERED** that Jevin, Inc. and Daniel Ptak's claims against Dobrott are dismissed in their entirety, and the case is REMANDED to the trial court for a determination concerning Dobrott's attorney's fees, sanctions, and expenses.

It is **ORDERED** that appellant HEATHER DOBROTT recover her costs of this appeal from appellee JEVIN, INC., A TEXAS CORPORATION; AND DANIEL E. PTAK, AN INDIVIDUAL.

Judgment entered November 30, 2018.